### PEONAGE CASES.

#### (District Court, E. D. Arkansas, W. D.    April 3, 1905.)

PEONAGE—DEFINITION.

> Peonage, within Rev. St. §§ 1990, 5526 [U. S. Comp. St. 1901, pp. 1266, 3715], making it an offense for any person to hold, arrest, return, etc., any person to a condition of peonage, is the holding of any person to service or labor to pay a debt due from the laborer to the employer, when such employé desires to leave the employment before his debt is paid off; and it is immaterial whether the contract of employment was voluntarily made by the laborer or not, and whether it was made for a present or pre-existing consideration.

Charge to Grand Jury.

TRIEBER, District Judge (orally). The court has been advised that in some sections of this district there now exists a system of peonage, in violation of the Constitution and laws of the United States. As the District Attorney informs the court that evidence will be laid before you for the purpose of securing the indictment of persons who are alleged to have been guilty of violating the laws of the United States on that subject, it is but proper that the court should charge you specially on this subject, which is one that has never, to my knowledge, been brought before any of the courts in this state, and for this reason you are, no doubt, not familiar with it.

As you are aware, immediately after the late Civil War, an amendment to the Constitution of the United States was adopted, whereby it was provided that neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction. It was found that, in a part of the territory acquired by the United States from Mexico as one of the results of the Mexican War, a system of peonage—a species of slavery—existed, whereby men were permitted to practically sell themselves, and place themselves in bondage for money advanced to them until the debt had been paid off. Congress recognized that in a government like ours—a republic—such a system of

peonage was more dangerous to the safety of our republican institutions than slavery was, for a slave was property, and possessed none of the rights of citizenship, could not vote, and had no voice in the administration of the affairs of the nation. On the other hand, the peon, although practically a slave as long as he was indebted to his master or employer, without the privilege of changing his vocation or leaving his master, no matter how small the debt, yet possessed all the rights of citizenship, including the right of franchise. To permit such a condition was deemed dangerous, as in the course of time it might happen that a very large number of people, compelled by their necessities, perhaps, or through ignorance or greed, might thus sell themselves to masters, and thereby come absolutely under their control, and yet, by reason of the privilege of the right to vote, in which they would probably be controlled by their masters, have a sufficient voice in the selection of the officials to determine the result of an election. In addition to that, such a condition might enable men of large wealth to obtain gradually a control of thousands of people—some by reason of their poverty, and others by reason of their ignorance—and thus establish a system in this country wholly incompatible with the principles upon which this government was founded.

Congress therefore enacted a law in 1867 (Rev. St. § 1990 [U. S. Comp. St. 1901, p. 1266]) declaring the holding of any person to service or labor under the system known as "peonage" to be abolished and forever prohibited in the United States, and all acts, laws, resolutions, orders, regulations, or usages of any territory or state wherein such system existed absolutely void, no matter whether such contracts were entered into between the master and laborer voluntarily or involuntarily. By another provision of that act (Rev. St. § 5526 [U. S. Comp. St. 1901, p. 3715]) it was made an offense against the laws of the United States for any person to hold, arrest, return, or cause to be held, arrested, or returned, or in any manner aiding in the arrest or return of, any person to a condition of peonage, punishable by fine or imprisonment.

Peonage, within the meaning of this law, is the holding of any person to service or labor for the purpose of paying or liquidating an indebtedness due from the laborer or employé to the employer, when such employé desires to leave or quit the employment before the debt is paid off. It is wholly immaterial whether the contract whereby the laborer is to work out an indebtedness due from him to the employer is entered into voluntarily or not. The laws of the United States declare all such contracts null and void, and they cannot be enforced. It is immaterial whether such a contract is made in consideration of a pre-existing indebtedness, or for a loan made at the time the contract is made. The law prohibits them, and, if made, declares the contract null and void; and any person who holds, arrests, returns, or causes to be held, arrested, or returned, or in any manner aids in the arrest or return of, any person to a condition of peonage, is, as I stated before, guilty of an offense against the laws of the United States, and subject to indictment by a grand jury of the district in which the acts are

committed. If a man enters into such a contract with another, the laws of the United States say that it is void, and he may at any time he desires leave his employment, although the debt is still unpaid; and any attempt on the part of the employer to prevent him from leaving, either by force, threats, or intimidation, or by guarding him and locking him up to prevent his escape, is, within the meaning of the laws of the United States, an offense. The fact even that the laborer entered into that contract voluntarily and with full knowledge of the conditions of his employment is no excuse, for the law says that no person shall enter into such a contract, and, if he does, it shall be null and void. If he violates his contract, he is liable in a civil action for the breach, but he cannot be forced to a performance or a continuance of the service.

As the Constitution and laws of the state of Arkansas prohibit a party from exacting usurious interest, and make any such contract, whether entered into voluntarily or involuntarily, null and void, so do the laws of the United States make this kind of a contract for labor null and void. To some extent, they are based upon the same principle, for in one instance the debtor is generally compelled to agree to the most exacting terms the money lender sees proper to impose, by reason of his poverty, or in some instances his ignorance, and therefore the lawmakers of this state have declared such a contract null and void. So, in the case of peonage, to protect the poor laborer against the exactions of the wealthy employer, compelling him to agree to work in many instances for a mere pittance for a loan made to relieve his most necessary wants, this law has been enacted.

If the evidence which is laid before you satisfies you that some men in this district have entered into contracts of that kind with some laborers, and that afterwards, before the debt was paid, the laborer wanted to quit, and he was prevented from doing so by force, threats, or intimidation, or if he has left, and was arrested either on some trumped-up criminal charge or without any warrant of law, and returned for the purpose of compelling him to carry out his contract and work until his debt was paid off, then it is your duty as grand jurors to find an indictment against such person or persons, and all others who have aided them in the commission of that offense.

This law is, no doubt, one of the most salutary statutes in existence, but it is wholly immaterial what your or my individual views as to the wisdom of the enactment of this law may be. The duty of the courts is to enforce all valid laws enacted by the lawmaking department of the state or government. If the people are dissatisfied with any law, they can change it by instructing their representatives in the Legislature or the halls of Congress to that effect, but until the law is repealed the courts are by their oaths bound to enforce it without fear or favor.

When I use the word "court," I do not mean merely the judge presiding, for he is only a part of the court. The word "court" in criminal proceedings includes grand juries and petit juries, as well as the presiding judges. Under the provisions of the Con-

stitution of the United States, no person can be held to answer for a crime, with the exception of a few petty misdemeanors, unless on a presentment or indictment of a grand jury. You will therefore readily see that judges are absolutely powerless to bring any person to trial for the commission of a crime unless the grand jurors of the district in which the offense was committed discharge their duty by returning an indictment against the alleged offender. You have been carefully selected from the many counties comprising this district to act as grand jurors on account of your high standing in the communities in which you reside, and your reputation as honorable citizens, who believe in the honest enforcement of the laws, and the court entertains no doubt but that you will discharge your duty in conformity with your oaths, without fear or favor, and without bias or prejudice.